IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SUNDANCE SERVICES, INC.,

    Plaintiff,

vs.                                                        Civ. No. 10-110 JP/CEG

DONNA ROACH, KELLY ROACH,
MICHAEL PATTERSON,
ANTHONY PENDER,
TERRY GARCIA, JOANN PENDER,
SYLVANNA VELASQUEZ, a/k/a
SYLVANNA TRUJILLO,
DARIO VELASQUEZ,
RICHARD VELASQUEZ, JR.,
RICHARD VELASQUEZ, SR.,
SYLVIA VELASQUEZ, KATY VELASQUEZ,
RICHARD SHORT, MAX VELASQUEZ, and
DOUBLE T FASHIONS,

    Defendants.

And

DONNA ROACH and KELLY ROACH,

    Counterclaimants,

vs.

SUNDANCE SERVICES, INC.,

    Counterdefendant.

And

DONNA ROACH and KELLY ROACH,

    Third-Party Plaintiffs,

vs.

MOHAMED HANIF MUSSANI,

    Third-Party Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff/Counterdefendant Sundance Services, Inc. (Sundance) and Third-Party Defendant Mohamed Hanif Mussani (Mussani) maintain that the Court should dismiss with prejudice the Seventh, Eighth, Ninth, and Tenth Causes of Action of Defendants/Counterclaimants/Third-Party Plaintiffs Donna Roach and Kelly Roach's (the Roaches) Answer and Counterclaim (Doc. No. 69)[1] under Fed. R. Civ. P. 12(b)(6) for failure to state plausible claims. *See* Plaintiff/Counterdefendant Sundance Services, Inc. and Third-Party Defendant Mussani's Motion to Dismiss Counterclaimants/Third-Party Plaintiffs Donna Roach and Kelly Roach's Seventh, Eighth, Ninth, and Tenth Causes of Action for Failure to State a Claim Upon Which Relief Can be Granted (Doc. No. 131), filed Feb. 28, 2011. The Court agrees with Sundance and Mussani.

---

[1]The Roaches' "Counterclaim" actually consists of ten Causes of Actions including counterclaims against Sundance as well as third-party claims against Mussani. The Roaches had also made third-party claims against Joe M. Carrillo, Anabel Carrillo, and Persempre Investments, LLC. On December 16, 2010, the Court dismissed the Third Cause of Action in which the Roaches brought third-party claims against the Carrillos. Order Dismissing Third Cause of Action of Third-Party Complaint (Doc. No. 95). On June 2, 2011, the Court dismissed the Roaches' First, Second, Fourth, and Sixth Causes of Action. Order Dismissing Without Prejudice First, Second, Fourth, and Sixth Causes of Action of Answer and Counterclaim (Doc. No. 69) (Doc. No.184). Finally, on June 9, 2011, the Court dismissed the Roaches' Fifth Cause of Action which included the Roaches' third-party claim against Persempre Investments, LLC. Order Dismissing Without Prejudice Fifth Cause of Action of Answer and Counterclaim (Doc. No. 69) (Doc. No. 189). The Roaches' remaining causes of actions are the subject of this Memorandum Opinion and Order and will be referred to collectively as the Counterclaim.

*A. Background*

Sundance claims in its Complaint for Civil RICO Violations, Fraud, Fraudulent Misrepresentation, Conversion, Constructive Trust, Restitution, and Accounting (Doc. No. 1) (Complaint) that the Roaches and Defendant Michael Patterson, all Sundance employees, "engaged in a pattern of racketeering activity for the purpose of depriving [Sundance] of tens of millions of dollars of its property through the commission of hundreds of acts in violation of federal and state law, including wire fraud, tax fraud, mail fraud, embezzlement and money laundering, over a period of nearly a decade." ¶2 of Complaint. Sundance further alleges that the Roaches illegally converted "assets of [Sundance] for their own use and for the use and benefit of their family members and friends." *Id*. at ¶3. Sundance also brings racketeering and fraud claims against the Roaches' friends and family members. The Roaches raise as a defense to the Complaint that Mussani, the sole shareholder, officer and director of Sundance, acted as an agent for Sundance and, thereby, authorized every action the Roaches took with respect to Sundance's assets.

The Roaches allege in the Seventh, Eighth, Ninth, and Tenth Causes of Action that if they are found liable to Sundance for damages under the Complaint, the Roaches are entitled to indemnification and contribution from Sundance and/or Mussani for those damages and for any costs, fees, expenses, settlement, and judgments the Roaches might have paid in connection with defending against Sundance's lawsuit.[2] The Roaches contend in the Counterclaim that they are not legally responsible for any damages sustained by Sundance and that, in fact, Sundance and

---

[2] The Roaches seek in the Seventh Cause of Action implied indemnification from Mussani. The Roaches seek in the Eighth and Ninth Causes of Action comparative and equitable indemnification from both Sundance and Mussani. The Tenth Cause of Action is a contribution claim against Sundance and Mussani.

Mussani proximately caused any damages which Sundance may have suffered.

Sundance and Mussani now move under Rule 12(b)(6) to dismiss the Seventh, Eighth, Ninth, and Tenth Causes of Action for failure to state a plausible claim. More specifically, Sundance and Mussani argue that there is no right to indemnification or contribution under the civil Racketeer Influenced and Corrupt Organizations Act (RICO), and that intentional tortfeasors like the Roaches are not entitled to indemnification or contribution. The Roaches contend that the parties can create a right to indemnification under RICO and that they, the Roaches, would be entitled to indemnity under RICO due to their lack of scienter and their good faith in following Mussani's directions regarding the expenditure of Sundance's assets. The Roaches, on the other hand, admit that "it is clear there is no express or implied right for indemnity created by the civil RICO statute...." Counterclaimants' Opposition to Plaintiff/Counterdefendant Sundance Services, Inc. and Third-Party Defendant Mussani's Motion to Dismiss Counterclaimants/Third-Party Plaintiffs Donna Roach and Kelly Roach's Seventh, Eighth, Ninth, and Tenth Causes of Action for Failure to State a Claim Upon Which Relief Can be Granted (Doc. No. 160) (Response) at 6. *See, e.g., County of Hudson v. Janiszewski*, 351 Fed. Appx. 662, 666 (3d Cir. 2009) (unpublished decision) (affirming district court's conclusion that RICO does not permit a right to indemnification). Consequently, any express or implied indemnity claims based on Sundance's RICO claims will be dismissed with prejudice for failure to state a plausible claim under Rule 12(b)(6).[3]

---

[3]"A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

The Roaches also argue that under New Mexico state law they are entitled to both traditional and proportional indemnity because they did not act with scienter and because they acted in good faith when they expended Sundance assets as directed by Mussani. Interestingly, the Roaches do not respond to Sundance and Mussani's assertion that the contribution claim fails to state a plausible cause of action. Although failure to respond constitutes consent by the Roaches that the contribution claim fails to state a plausible cause of action, the Court will nonetheless address whether the contribution claim survives a Rule 12(b)(6) challenge. *See* D.N.M. LR-Cv 7.1(b) ("The failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion.").

*B. Standard of Review*

A court, in accordance with Rule 12(b)(6), may dismiss a complaint for "failure to state a claim upon which relief can be granted." In ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded allegations as true and must view them in the light most favorable to the plaintiff. *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). Rule 12(b)(6) requires that a complaint set forth the grounds of a plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint does not need to include detailed factual allegations, "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* In other words, dismissal of a complaint under Rule 12(b)(6) is proper only where it is obvious that the plaintiff failed to set forth "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937, 1949 (2009) (citations omitted).

*C. Discussion*

   *1. The Roaches' Remaining Indemnity Claims*

      *a. RICO Indemnity Claims Which are Neither Implied nor Express*

Although the Roaches concede that there are no implied or express rights to indemnification arising from RICO claims, the Roaches nonetheless argue that the parties can create their own RICO indemnity rights. The Roaches cite to *Sikes v. American Tel. and Tel. Co.*, 841 F. Supp. 1572 (S.D. Ga. 1993), a RICO case, to support their argument. The district court in *Sikes* stated that "[i]ndemnity rights may generally arise in several ways: Congress may create the right by statute (either expressly or impliedly); the federal courts may create the right through federal common law; or the parties themselves may <u>create the right by private contractual agreement</u>." *Id*. at 1581 (citations omitted) (emphasis added). The district court determined that Congress did not create express or implied statutory indemnity rights for RICO defendants. *Id*. The district court further held "[i]f an entity is itself found to have engaged in a pattern of unlawful activity, and is found to have possessed the requisite scienter to sustain RICO liability, [the] Court will not enforce an agreement by which that entity is allowed to escape liability entirely." *Id*. at 1582. Contrary to the Roaches' argument, *Sike* actually stands for the proposition that parties <u>cannot</u> by agreement create indemnity rights for RICO defendants. Moreover, there is no allegation in the Counterclaim that Sundance or Mussani

agreed to provide any indemnity rights to the Roaches.

The Roaches also contend that they would be entitled to indemnification under RICO because they have acted without scienter and have acted in good faith in expending Sundance's assets. This contention, however, is illogical. According to the Counterclaim, if the Roaches are found liable under RICO, then they would allegedly be entitled to indemnification from Sundance and/or Mussani. To be found liable under RICO would entail a finding that the Roaches "engaged in a pattern of unlawful activity" and that they "possessed the requisite scienter to sustain RICO liability...." *See id.* Obviously, if the Roaches are found liable under RICO, they would have the requisite scienter and accordingly would not have acted in good faith. In sum, the Roaches have not stated a plausible RICO based indemnity claim arising from any kind of agreement between the parties, or otherwise.

### b. State Indemnity Claims: Traditional and Proportional Indemnity

Next, the Roaches assert that if there is no right to indemnification for RICO liability, they can still assert indemnity rights arising from Sundance's New Mexico state law claims. The Roaches specifically refer to the New Mexico common law principles of traditional indemnification and proportional indemnification.

#### (1) Traditional Indemnity

The Roaches maintain that traditional indemnity applies in this case because even if they are found liable under Sundance's state claims, the Roaches were nonetheless passive wrongdoers, i.e., agents of Sundance following the direction of the principal, Sundance (acting through Mussani), and were not the primary wrongdoers. "[T]raditional indemnity is a judicially created common-law right that grants to one who is held liable an all-or-nothing right of recovery from a third-party...." *In re Consolidated Vista Hills Retaining Wall Litigation*, 119

N.M. 542, 545, 893 P.2d 438, 441 (1995).  "Under traditional indemnification[,] an indemnitee is entitled to be made whole by a third party such as the primary wrongdoer."  *Id*.  "The purpose of traditional indemnification is to allow a party who has been held liable without active fault to seek recovery from one who was actively at fault.  Thus[,] the right to indemnification involves whether the conduct of the party seeking indemnification was passive and not active or in *pari delicto* with the indemnitor."  *Id*. at 546, 893 P.2d at 442.  Active conduct occurs when "'an indemnitee has personally participated in an affirmative act of negligence, was connected with negligent acts or omissions by knowledge or acquiescence, or has failed to perform a precise duty which the indemnitee had agreed to perform.'"  *Id*. at 547, 893 P.2d at 443.  Passive conduct, on the other hand, "occurs when the party seeking indemnification fails to discover and remedy a dangerous situation created by the negligence or wrongdoing of another.  Passive conduct may also occur when a party is nothing more than the retailer in the chain of distribution of a product."  *Id*. (citations omitted).  For instance, traditional indemnity is available "when a person is directed by another to do something that appears innocent but is in fact wrongful."  *Id*. at 546, 893 P.2d at 442.

Although "[t]raditional indemnification would appear to apply only when there is some independent preexisting legal relationship between the indemnitee and indemnitor," no New Mexico court "has denied indemnification to a passive wrongdoer because of the absence of an independent, preexisting legal relationship."  *Id*. at 545, 546, 893 P.2d at 441, 442.  Moreover, the right to indemnification can arise from "an express or implied contract, or 'may ... arise without agreement and by operation of law to prevent a result which is regarded as unjust or unsatisfactory.'"  *Id*. at 546, 893 P.2d at 442 (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* §51 at 341 (5th ed. 1984)).  Traditional indemnity applies to

negligence cases, strict liability cases involving "the chain of supply of a product," and breach of warranty cases. *Id.*

The Roaches' traditional indemnity argument fails for two reasons. First, Sundance does not bring negligence, strict liability, or breach of warranty claims against the Roaches. Instead, Sundance brings intentional tort claims against the Roaches. Other state courts have held that indemnity, in general, does not apply to intentional torts. *See, e.g., First American Corp. v. Al-Nahyan*, 948 F.Supp. 1107, 1119 (D. D.C. 1996) (intentional activities, as opposed to negligent acts, deprive party of right to indemnification); *Piscitelli v. Metro North Commuter RR*, 1995 WL 541806 *4 (Conn. Super.) (unpublished decision) ("[I]ndemnity requires a finding of negligence...."); *Canavin v. Naik*, 648 F.Supp. 268, 269 (E.D. Pa. 1986) (under Pennsylvania law, indemnity is not available to intentional tortfeasors "because it would permit him to escape liability for his own deliberate acts."). Second, the Roaches have failed to convince the Court that if they are found liable for committing intentional torts against Sundance, the Roaches could be considered passive wrongdoers, without active fault, and thus, entitled to traditional indemnification. By definition, an intentional tortfeasor "willfully" engages in conduct with general or specific intent. *See Black's Law Dictionary* at 1527 (8th ed.) (definition of "intentional tort"). In other words, an intentional tortfeasor affirmatively acts and cannot be considered "passive" and without active fault. The Roaches, therefore, would not be not entitled to traditional indemnification from either Mussani or Sundance.

*(2) Proportional Indemnity*

In New Mexico, proportional indemnity applies when "a defendant who is otherwise denied apportionment of fault ... seek[s] partial recovery from another at fault." " *In re Consolidated Vista Hills Retaining Wall Litigation*, 119 N.M. at 552, 893 P.2d at 448.

Specifically, proportional indemnification applies when the indemnitee "has been adjudged liable for full damages on a third-party claim that is not susceptible under law to proration of fault among concurrent tortfeasors." *Id*. In other words, proportional indemnification does not apply "when a factfinder makes a determination that a concurrent tortfeasor is proportionally liable to an injured party." *Id*. at 552, 893 P.2d at 448.

Although the Roaches explain the doctrine of proportional indemnification as described by the New Mexico courts, the Roaches do not argue how proportional indemnification applies to their indemnification claims. For that reason alone, the Roaches' contention that they are entitled to proportional indemnification is without merit. Even so, proportional indemnification would not apply here. The Court construes the Eighth Cause of Action for "comparative" indemnity to be the basis for the Roaches' proportional indemnity claim. The Roaches' use of the term "comparative" in the Eighth Cause of Action to discuss fault brings to mind the New Mexico "comparative" fault doctrine. The comparative fault doctrine applies only to concurrent tortfeasors. To be concurrent tortfeasors, the tortfeasors must have negligently caused "'a single, indivisible injury....'" *Gulf Ins. Co. v. Cottone*, 2006-NMCA-150 ¶20, 140 N.M. 728 (quoting *Payne v. Hall*, 2006-NMSC-029 ¶11, 139 N.M. 659). Each concurrent tortfeasor is then "'severally responsible for its own percentage of comparative fault for that injury.'" " *Id.* (quoting *Payne*, 2006-NMSC-029 ¶11). The reference in the Eighth Cause of Action to fault in the context of "comparative" indemnity as well as the "single, indivisible" injuries Sundance is claiming in its Complaint, i.e., loss of assets, leads the Court to conclude that the "comparative" indemnity claim is based on the assumption that the Roaches, Sundance, and Mussani would be concurrent tortfeasors. As concurrent tortfeasors, the Roaches would not be denied apportionment of fault under the comparative fault doctrine and, therefore, proportional

indemnity would not be available to the Roaches.  In sum, the Roaches have failed to state a plausible claim for either traditional or proportional indemnification against Sundance and/or Mussani.  Those claims will, therefore, be dismissed with prejudice under Rule 12(b)(6).

> 2. *The Roaches' Contribution Claim*
>> a. *RICO Based Contribution Claim*

Courts have consistently held that neither RICO nor federal common law provide a RICO defendant with a right to contribution.  *See, e.g., County of Hudson*. 351 Fed. Appx. at 666; *First American Corp.*, 948 F.Supp. at 1118; *O & K Trojan, Inc. v. Municipal & Contractors Equipment Corp.*, 751 F.Supp. 431, 433-34 (S.D. N.Y. 1990); *Seminole Elec. Co-op, Inc. v. Tanner*, 635 F.Supp. 582, 584 (M.D. Fla. 1986).  At least one case suggests that parties can create RICO contribution rights "in a contractual agreement preceding the litigation."  *Sikes*, 841 F.Supp. at 1582.  Here, as previously mentioned, the Roaches have not alleged in their Counterclaim that there was any agreement that Sundance or Mussani would provide the Roaches with a RICO contribution right.  The Roaches have simply failed to state a plausible RICO contribution claim.  Hence, that claim will be dismissed with prejudice under Rule 12(b)(6).

>> b. *State Contribution Claim*

In New Mexico, a finding of negligence is needed before there can be a right of contribution.  *Standhardt v. Flintkote Co.*, 84 N.M. 796, 805, 508 P.2d 1283, 1292 (1973).  Even if there is an underlying finding of negligence, contribution does not apply to concurrent tortfeasors.  *Gulf Ins. Co.*, 2006-NMCA-150 ¶29.  As discussed above, Sundance does not allege that the Roaches acted negligently with respect to Sundance's assets; Sundance contends that the Roaches intentionally engaged in unlawful activity to diminish Sundance's assets.  Moreover,

the Roaches appear to base their "comparative" indemnity claim on the assumption that they, Sundance, and Mussani would be concurrent tortfeasors in causing Sundance's damages. It is clear that the Roaches have failed to allege sufficient facts to support a plausible state claim for contribution. Consequently, that claim will be dismissed with prejudice under Rule 12(b)(6).

*D. Conclusion*

The Roaches have not stated plausible indemnification or contribution claims arising from either alleged RICO liability or state intentional tort liability. Consequently, the Roaches' Seventh, Eighth, Ninth, and Tenth Causes of Action are subject to Rule 12(b)(6) dismissal. With the dismissal of the Seventh, Eighth, Ninth, and Tenth Causes of Action, the Roaches' Counterclaim will be dismissed in its entirety.

IT IS ORDERED that:

1. Plaintiff/Counterdefendant Sundance Services, Inc. and Third-Party Defendant Mussani's Motion to Dismiss Counterclaimants/Third-Party Plaintiffs Donna Roach and Kelly Roach's Seventh, Eighth, Ninth, and Tenth Causes of Action for Failure to State a Claim Upon Which Relief Can be Granted (Doc. No. 131) is granted; and

2. the Seventh, Eighth, Ninth, and Tenth Causes of Action of the Answer and Counterclaim will be dismissed with prejudice.

_____
SENIOR UNITED STATES DISTRICT JUDGE