IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SUNDANCE SERVICES, INC.,

       Plaintiff,

vs.                                               Civ. No. 10-110 JP/CEG

DONNA ROACH, KELLY ROACH,
MICHAEL PATTERSON,
ANTHONY PENDER,
TERRY GARCIA, JOANN PENDER,
SYLVANNA VELASQUEZ, a/k/a
SYLVANNA TRUJILLO,
DARIO VELASQUEZ,
RICHARD VELASQUEZ, JR.,
RICHARD VELASQUEZ, SR.,
SYLVIA VELASQUEZ, KATY VELASQUEZ,
RICHARD SHORT, MAX VELASQUEZ, and
DOUBLE T FASHIONS,

       Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

Defendants Donna and Kelly Roach (the Roaches) argue that Counts I, II, and III of the

COMPLAINT FOR CIVIL RICO VIOLATIONS, FRAUD, FRAUDULENT

MISREPRESENTATION, CONVERSION, CONSTRUCTIVE TRUST, RESTITUTION, AND

ACCOUNTING (Doc. No. 1) (COMPLAINT), filed February 9, 2010, should be dismissed

under Fed. R. Civ. P. 9(b) for failure to plead allegations of fraud with particularity and under

Fed. R. Civ. P. 12(b)(6) for failure to state plausible claims upon which relief can be granted.

*See* MOTION OF DEFENDANTS DONNA ROACH AND KELLY ROACH TO DISMISS

COUNTS I, II, AND III OF PLAINTIFF SUNDANCE SERVICES, INC.'S CIVIL RICO

CLAIM[S] FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE

GRANTED (Doc. No. 178) (MOTION TO DISMISS), filed May 23, 2011.  Counts I, II, and III

are based on the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§1961-1968,[1] and constitute the only federal claims brought by Plaintiff Sundance Services, Inc. (Sundance).[2]  The remainder of Sundance's claims are based on state law.  Should the Court decide to dismiss a RICO Count, Sundance requests that the Court allow it to amend that Count to cure any pleading deficiency.

Having reviewed the briefs and relevant law, the Court determines that: 1) although Sundance's allegations of fraud comply with Rule 9(b), Counts I, II, and III should be dismissed without prejudice because they do not state plausible RICO claims under Rule 12(b)(6); 2) Sundance's request to amend Counts I, II, and III should be denied; and 3) the remaining state claims should be dismissed without prejudice because the Court should decline to exercise supplemental jurisdiction over those claims under 28 U.S.C. §1367(c)(3).  In sum, the entire action should be dismissed without prejudice.

A.  *Sundance's Alleged RICO Claims*

Sundance alleges in the COMPLAINT that the Roaches (former Sundance employees) and Defendant Michael Patterson (apparently a current Sundance employee) participated in a pattern of racketeering which deprived Sundance "of tens of millions of dollars of its property through the commission of hundreds of acts in violation of federal and state law, including wire fraud, tax fraud, mail fraud, embezzlement and money laundering, over a period of nearly a decade."  COMPLAINT at ¶2.  Sundance contends that the primary wrongdoers were the

---

[1]References to RICO in this MEMORANDUM OPINION AND ORDER are to the federal RICO statute and not to any state RICO statute.

[2]Sundance is involved in extracting refinery grade oil from waste products and sells that oil in interstate and international commerce.

Roaches.  Sundance further alleges in the COMPLAINT that the Roaches illegally converted Sundance assets for their own use and for the benefit of family members and friends.  *Id*. at ¶3. Sundance  named those family members and friends as Defendants in this lawsuit for participating "in the racketeering scheme by receiving plaintiff's converted property through the wires and/or interstate mail, and, in many cases, fraudulently representing themselves as employees and/or contractors of the plaintiff."  *Id*.

Sundance specifically maintains in the COMPLAINT that the Roaches used their illegal proceeds to pay personal credit card bills, to pay personal store card bills, to pay utility bills, to make payments on personal loans, to make a payment on a personal mortgage, and to pay for various other personal expenses.  Moreover, the Roaches allegedly deposited illegal proceeds in their personal bank accounts and withdrew money from Sundance bank accounts.  Additionally, Sundance contends that the Roaches laundered illegal proceeds through the construction of a home, a guest cottage, and a swimming pool; through the purchase of a motor home and retail establishments; through the purchase and sale of real property in New Mexico, Texas, and Oklahoma; and through the mislabeling of Sundance's income.

    *1.  Descriptions of Defendants Named in the RICO Counts*

The Roaches are named Defendants in Counts I, II, and III.  In 1998, Sundance promoted Donna Roach from an administrative assistant to the position of president and secretary of Sundance.  According to Sundance, Donna Roach "had signing authority for the plaintiff and was entrusted with sole responsibility for handling bookkeeping, accounting, banking, payroll, human resources and customer relations for the plaintiff."  *Id*. at ¶30.  Donna Roach's employment with Sundance ended in 2008.  In 1998, Sundance promoted Kelly Roach from laborer to plant manager.  Kelly Roach also served as a Sundance director from 2007 to 2008.

Kelly Roach's employment with Sundance, likewise, ended in 2008.  Sundance notes in the COMPLAINT that the Roaches' compensation was not based upon Sundance's profits or revenues.

Sundance names Patterson as a Defendant in Counts I and II.  Patterson "was initially responsible for both plant management and sales, becoming solely responsible for sales after defendant KELLY ROACH's promotion to plant manager in 1998."  *Id*. at ¶32.  It appears that Patterson is currently employed by Sundance.

Defendants Sylvanna Velasquez a/k/a Sylvanna Trujillo (Trujillo); Richard Velasquez, Jr.; Richard Velasquez, Sr.; and Richard Short are named in Count I only.  Sundance contends in the COMPLAINT that Trujillo, Donna Roach's niece, "was, for a period of time, placed on plaintiff's payroll by defendant DONNA ROACH, where she performed virtually no duties but received cash, goods, vacations and motor vehicles at plaintiff's expense."  *Id*. at ¶33.  Sundance further contends that Richard Velasquez, Jr., Donna Roach's nephew, was, likewise, "for a period of time, placed on plaintiff's payroll by defendant DONNA ROACH, where he performed virtually no duties but received cash, goods, a vehicle and other property of the plaintiff."  *Id*. at ¶34.  Additionally, Sundance asserts that Richard Velasquez, Sr., Donna Roach's brother, "received at least one cashier's check drawn on plaintiff's corporate account by defendant MICHAEL PATTERSON, and has received cash, a vehicle, and other property of the plaintiff" even though "he never worked for or provided goods or services to the plaintiff."  *Id*. at ¶22.  Richard Velasquez, Sr. was also allegedly involved with A. R. Construction, a purportedly

fictitious company owned by one of Donna Roach's uncles,[3] which received "checks written by defendant DONNA ROACH from plaintiff's corporate accounts for non-existent services, which were cashed and deposited by defendant MICHAEL PATTERSON." *Id*. at ¶15.   Finally, Sundance alleges that Short, another of Donna Roach's nephews, "was, for a period of time, placed on plaintiff's payroll by defendant DONNA ROACH, where he performed virtually no duties but received cash and other property of the plaintiff." *Id*. at ¶35.

   *2.  The Alleged Racketeering Scheme*

   Sundance maintains in the COMPLAINT that the racketeering scheme began in 2001 and continued until 2008.   Sundance alleges that when its revenues substantially increased Donna Roach abused her positions as president and secretary of Sundance to access Sundance accounts without authorization.   Donna Roach was allegedly assisted in this endeavor by Patterson.   Kelly Roach allegedly abused his position as plant manager to the detriment of Sundance. Sundance further contends in the COMPLAINT that the Roaches and Patterson "conspired to infiltrate plaintiff's operations and, under cover of the legitimacy conferred by the plaintiff, utilized its assets and access to business and financial opportunities to engage in a pattern of racketeering activity for the benefit of themselves and" the other Defendants.   *Id*. at ¶38.   Sundance contends that the Roaches and Patterson, with the assistance of the other Defendants, committed hundreds of fraudulent acts through the use of wire services and United States mail.   Additionally, Sundance asserts in the COMPLAINT that the racketeering scheme included money laundering as well as tax fraud.

---

   [3]A. R. Construction was originally a Defendant in this case but on September 23, 2010, the Court dismissed Sundance's claims against A. R. Construction without prejudice.  *See* ORDER OF DISMISSAL WITHOUT PREJUDICE AS TO DEFENDANT A. R. CONSTRUCTION (Doc. No. 79).

3.  *Alleged Racketeering Activities (RICO Predicate Acts): Wire Fraud, Mail Fraud, and Money Laundering*[4]

Racketeering activity, by statutory definition, includes the federally indictable crimes of wire fraud, mail fraud, and money laundering.  18 U.S.C. §1961(1)(B).  Those criminal acts are "'referred to as predicate acts, because they form the basis for liability under RICO.'" *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006), *cert. denied*, 549 U.S. 1209 (2007) (quoting *BancOklahoma Mortgage Corp. v. Capital Title Co.*, 194 F.3d 1089, 1102 (10th Cir. 1999) (internal quotation omitted)).  It is not necessary for a person to have been convicted of a predicate act for that person to be liable under RICO.  *Id.* at 1262.  Sundance sets forth the following factual allegations in the COMPLAINT to demonstrate that the Roaches committed the predicate acts of wire fraud, mail fraud, and money laundering.

a.  *The Commission of Wire Fraud in Violation of 18 U.S.C. §1343*

Sundance generally alleges in the COMPLAINT at ¶40 that the Roaches used wire communications

> to (a) transfer plaintiff's money to third parties for payment of defendants' personal expenses, (b) use plaintiff's money to pay themselves for unauthorized expenses, bonuses and salaries, and (c) enrich themselves and their friends and relatives by, *inter alia*, compensating friends and relatives in exchange for fraudulently representing themselves or their companies as legitimate contractors or employees providing services to the plaintiff, when in fact no such services were being provided.

---

[4]Although the COMPLAINT appears to include tax fraud as a predicate act, Sundance states in PLAINTIFF/COUNTERDEFENDANT SUNDANCE SERVICES, INC.'S RESPONSE TO MOTION OF DEFENDANTS DONNA ROACH AND KELLY ROACH TO DISMISS COUNTS I, II, AND III OF PLAINTIFF SUNDANCE SERVICES, INC.'S CIVIL RICO CLAIM[S] FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED (Doc. No. 191) (RESPONSE) at 14 n.7, filed June 20, 2011, that it "does not intend to assert 'tax fraud' itself as a predicate act" but that "the tax fraud allegations are a critical element of Sundance's claims for money laundering under RICO."  Accordingly, the Court will not refer to the alleged tax fraud as a predicate act.

Sundance refers to A. R. Construction; Trujillo; Defendant Dario Velasquez;[5] Richard

Velasquez, Jr.; Richard Velasquez, Sr.; Short; Armando Ramos a/k/a Armondo Ramos;[6] and

Defendant Double T Fashions[7] with respect to those allegations.  Although Sundance contends in

the COMPLAINT that "[i]t is not possible for plaintiff to plead with particularity every instance

of wire fraud that advanced, furthered, executed or concealed defendants' scheme because the

particulars of most such transactions are (or were) within the exclusive control and within the

exclusive knowledge of the defendants, and because, upon information and belief, defendants

destroyed some or all of the evidence of their fraud that was in their possession," Sundance,

nonetheless, specifies "[b]y way of example" more than 180 instances of alleged wire fraud.  *Id*.

at ¶41.

First, Sundance alleges that from July 17, 2007 to May 2008, Donna Roach electronically

transferred at least $85,701.55 of Sundance's funds from Sundance's Bank of America account

to pay for personal expenses incurred on her personal Chase Bank credit card.[8]  Second,

Sundance alleges that from November 29, 2007 through September 9, 2008, Donna Roach

electronically transferred at least $51,777.46 of Sundance's funds from Sundance's Wells Fargo

account to pay for personal expenses incurred on her personal Capital One Bank credit card.

---

[5]Dario Velasquez is Donna Roach's brother.

[6]Ramos is no longer a Defendant in this case.  ORDER OF DISMISSAL WITHOUT
PREJUDICE AS TO DEFENDANT ARMANDO RAMOS A/K/A ARMONDO RAMOS (Doc.
No. 73), filed Aug. 25, 2010.

[7]Double T Fashions is owned by Defendant Terry Garcia, Donna Roach's mother.

[8]For most of the groups of transactions, Sundance lists the specific date of each
transaction, the amount of the transaction, the Sundance bank account number at issue, and if
applicable, the specific Sundance check number involved or the receiving account number.

Third, Sundance alleges that from January 3, 2006 through September 26, 2008, the Roaches electronically transferred at least $67,862.23 of Sundance's funds from Sundance's Bank of America account to pay for personal expenses incurred on their personal Sam's Club store card. Fourth, Sundance alleges that from 2002 through 2005, Donna Roach caused $11,645.00 of Sundance's funds to be wired to Dario Velasquez who "performed virtually no services" for Sundance.  COMPLAINT at ¶41(D).  Fifth, Sundance alleges that from January 29, 2007 through August 13, 2008, the Roaches used at least $33,710.88 of Sundance's funds to make online payments for personal expenses incurred on their personal Target store card.  Sixth, Sundance alleges that from August 5, 2005 through October 11, 2008, the Roaches used at least $69,094.78 of Sundance's funds to make online payments for personal expenses incurred by various personal installment loans, car loans, and credit card bills.  Seventh, Sundance alleges that on May 4, 2004, the Roaches made an online transfer from a Sundance bank account to make a payment on a personal loan for the construction of a swimming pool at their residence which was supposedly built with Sundance funds.  Eighth, Sundance alleges that from February 7, 2006 through October 23, 2008, the Roaches used at least $8,846.40 of Sundance's funds from Sundance's Bank of America account to pay for personal expenses incurred on the Roaches' personal Home Depot store card.  Ninth, Sundance alleges that from July 2, 2002 through April 30, 2008, the Roaches made at least 24 online transfers of Sundance's funds totaling $55,775.00 to their personal bank accounts.  Tenth, Sundance alleges that from October 9, 2002 through September 9, 2008, the Roaches made 93 electronic payments to their personal Capital One Bank credit card for personal expenses using a total of $29,373.34 from Sundance's Wells Fargo account.  Eleventh, Sundance alleges that from January 9, 2002 through August 11, 2008, the Roaches on 21 occasions used, without Sundance's authorization, a Sundance bank card to

8

purchase goods and services for their own "personal use at various retail establishments and restaurants;" the Roaches allegedly expended $3,021.19 on those purchases.   COMPLAINT at ¶41(K).  Twelfth, Sundance alleges that on August 12, 2008, the Roaches made an online transfer of $48,102.08 of Sundance's funds from a Sundance Bank of America account to make a payment on Kelly Roach's personal mortgage.  Thirteenth, Sundance alleges that the Roaches made online wire transfers of a total of $47,553.03 of Sundance's funds to pay for an "Epay" transaction dated March 10, 2008; and for other transactions on September 26, 2003; November 19, 2007; September 7, 2007; and December 21, 2007.  Finally, Sundance alleges that from November 26, 2001 through August 11, 2008, the Roaches on 29 occasions withdrew a total of $7,218.50 of Sundance's funds from an ATM machine to pay for their personal expenses. Sundance maintains in the COMPLAINT at ¶42 that aside from the Roaches, the other Defendants received the proceeds of many of these wire transactions and in many cases those Defendants received these proceeds with "knowing and intentional participation in such scheme...."

Sundance also notes in the COMPLAINT that each individual wire transaction was under $10,000 thereby evidencing "an intent to hide the pattern of racketeering activity from detection by ensuring that no single transaction was large enough to attract the attention of plaintiff or its accountants.  In the banking context, a pattern of transactions under $10,000 for an extended period of time is itself a violation of federal criminal law."  COMPLAINT at ¶43 (citing 31 U.S.C. §5324). The Roaches, however, dispute the relevance of the allegation that wire transactions under $10,000 somehow demonstrate an intent by the Roaches to hide the alleged pattern of racketeering activity from Sundance.  The Roaches contend that it is not criminal to make transactions under $10,000 and that each separate transaction was under $10,000 for the

9

simple reason that the bills were under $10,000.  Sundance does not challenge this contention.

In fact, §5324 concerns the structuring of transactions to evade a financial institution's

obligation to file reports with the Secretary of Treasury whenever the financial institution is

involved in a cash transaction exceeding $10,000, a situation not present here.  *See Ratzlaf v.*

*United States*, 510 U.S. 135, 136 (1994).

### b.  The Commission of Mail Fraud in Violation of 18 U.S.C. §1341

Sundance generally alleges in the COMPLAINT at ¶44 that the Roaches used the United

States Postal Service and other interstate carriers to send Sundance's money

> (a) to third parties for the payment of defendants' personal expenses, (b) to themselves
> for unauthorized expenses, bonuses and salaries, and (c) to friends and relatives
> compensated by defendants to pose as legitimate contractors or employees providing
> services to the plaintiff, when in fact such third parties were neither actual contractors nor
> providers of any services of value to the plaintiff.

Sundance refers to A. R. Construction; Trujillo; Richard Velasquez, Jr.; Richard Velasquez, Sr.;

Short; Ramos; and Double T Fashions with respect to those allegations.  As with the wire fraud

allegations, Sundance notes that "[i]t is not possible for plaintiff to plead with particularity every

instance of mail fraud that advanced, furthered, executed or concealed defendants' scheme

because the particulars of most such transactions are (or were) within the exclusive control and

within the exclusive knowledge of the defendants, and because, on information and belief,

defendants destroyed some or all of the evidence of their fraud that was in their possession."  *Id.*

at ¶45.  Nevertheless, Sundance makes the following specific allegations, "[b]y way of

example,": 1) on January 23, 2006, the Roaches mailed a check drawn on Sundance's Bank of

America account for $1,858.28 to pay for their personal electric bill; 2) on July 8, 2008, the

Roaches mailed a check drawn on Sundance's Bank of America account for $760.01 to pay for

their personal electric bill; and 3) from December 6, 2002 through August 1, 2003, the Roaches

mailed seven checks using Sundance's funds to pay a personal debt owed to GMAC totaling
$5,923.88.  *Id.*

> ### c.  The Commission of Money Laundering in Violation of 18 U.S.C.
> ### §§1956(a)(1)(A)(ii), 1956(a)(1)(B)(i), and 1957(a)

In the COMPLAINT, Sundance maintains that the Roaches laundered the proceeds from
the wire and mail fraud when they used those proceeds to construct a home, a guest cottage, and
a swimming pool; to purchase a motor home; and to purchase and sell real property in Texas,
New Mexico, and Oklahoma.  Sundance also maintains that Donna Roach sold Sundance two
properties in Eunice, New Mexico, titled in the name of Terry Garcia, but Donna Roach never
transferred the titles of the properties to Sundance.  Sundance further contends that the Roaches
used the proceeds of their racketeering activities to purchase A & S Express (a New Mexico
restaurant), The Ice Express (a New Mexico retail business), and The Little Store (a New
Mexico retail business).

In addition to allegedly laundering the proceeds from the purported commission of wire
and mail fraud, Sundance alleges that the Roaches intended to violate 26 U.S.C. §7201 and/or
§7206 of the Internal Revenue Code of 1986 "for the purpose of concealing or disguising the
nature, location, source, ownership or control of the proceeds of such specified unlawful
activity."  COMPLAINT at ¶56.  Sundance specifically contends that the Roaches deliberately
mislabeled Sundance's income thereby falsifying "records relating to the financial conditions of
a taxpayer" in violation of §7206(4)(B).  *Id.* at ¶48.  According to Sundance, the Roaches'
actions prevented Sundance from timely filing its corporate tax returns.  Finally, Sundance
alleges "that after a reasonable opportunity for further investigation and discovery, which is
continuing, plaintiff will be able to plead with particularity many more fraudulent acts

committed by the Defendants in furtherance of their scheme." *Id.* at ¶57.

    *4. The RICO Counts*

        *a. Count I: 18 U.S.C. §1962(c)*

Sundance alleges in Count I that the Roaches; Patterson; Trujillo; Richard Velasquez, Jr.;

Richard Velasquez, Sr.; and Short (collectively, the RICO Defendants) violated 18 U.S.C.

§1962(c) of RICO.  Section 1962(c) states:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Sundance contends in Count I that Sundance was a victim enterprise "engaged in, and the

activities of which affect, interstate and foreign commerce."  COMPLAINT at ¶60.  Sundance

further contends that the RICO Defendants were persons employed by or associated with

Sundance who conducted and participated in the conduct of Sundance's affairs through a pattern

of racketeering which included the commission of wire fraud, mail fraud, and money laundering.

        *b. Count II: 18 U.S.C. §1962(a)*

Sundance alleges in Count II that the Roaches and Patterson violated 18 U.S.C. §1962(a)

of RICO.  Section 1962(a) states, in pertinent part,:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income or the proceeds of such income, in the acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Sundance asserts that the Roaches and Patterson were principals who received income from a

pattern of racketeering and used part of that income or the proceeds of that income to acquire an

interest in, establish, or operate the following enterprises which affect interstate commerce: A &

S Express, The Ice Express, and The Little Store.  Sundance also alleges that the Roaches and

Patterson, as principals, used or invested income from the pattern of racketeering to acquire an

interest in, establish, or operate an enterprise or enterprises which purchased and sold real estate

located in Texas, New Mexico, and Oklahoma.  That enterprise or those enterprises allegedly

affected interstate or foreign commerce.

> ### c.  Count III: 18 U.S.C. §1962(b)

In Count III, Sundance maintains that the Roaches violated 18 U.S.C. §1962(b) of RICO.

Section 1962(b) states:

> It shall be unlawful for any person through a pattern of racketeering activity or through
> collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest
> in or control of any enterprise which is engaged in, or the activities of which affect,
> interstate or foreign commerce.

Sundance alleges that the Roaches are persons who through a pattern of racketeering activities

including money laundering acquired and/or maintained an interest in and/or control of the

following enterprises which affect interstate or foreign commerce: A & S Express, The Ice

Express, The Little Store, and the enterprise or enterprises which purchased and sold real estate

in Texas, New Mexico, and Oklahoma.

### B.  Discussion

The Roaches argue that the RICO Counts should be dismissed for several reasons.  First,

the Roaches assert that Sundance violated Rule 9(b) by failing to plead with particularity the

alleged RICO predicate acts of wire fraud, mail fraud, and money laundering.  Second, the

Roaches contend that Sundance did not allege sufficient facts in the COMPLAINT for the RICO

Counts to survive a Rule 12(b)(6) motion to dismiss for failure to state a plausible claim upon

which relief can be granted.  In particular, the Roaches argue that Sundance has not pled

adequate facts to establish plausible RICO predicate acts of wire fraud, mail fraud, and money

laundering.  Moreover, the Roaches argue that Sundance has failed to plead sufficient facts to

show that the alleged predicate acts plausibly constitute a "pattern of racketeering," a

requirement for RICO liability.  Finally, the Roaches maintain that Sundance incorrectly pled the

nature of the RICO enterprise in Count I and so Sundance has not stated a plausible RICO claim

in Count I.  Although Sundance opposes the MOTION TO DISMISS, should the Court decide to

dismiss any of the RICO Counts, Sundance requests that the Court allow it to amend the

COMPLAINT to cure any deficiencies in its RICO pleadings.

### 1.  Rule 9(b): Pleading Fraud with Particularity

Rule 9(b) states:

> In alleging fraud or mistake, a party must state with particularity the circumstances
> constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a
> person's mind may be alleged generally.

It is well-established that Rule 9(b) applies to the predicate acts of wire and mail fraud.  *Tal*, 453

F.3d at 1263.  Whether Rule 9(b) applies to the predicate act of money laundering is less than

clear.  *See, e.g., Shapo v. O'Shaughnessy*, 246 F.Supp.2d 935, 956 n.4  (N.D. Ill. 2002).  The

Court, however, need not decide if Rule 9(b) applies to the money laundering claim if Sundance

has pled with particularity the wire and fraud allegations which underlie the money laundering

claims.  *See id.  See also* COMPLAINT at ¶56 (Roaches allegedly engaged in money laundering

using "the proceeds of transactions derived from specified unlawful activity including, but not

limited to, wire fraud, tax fraud and mail fraud...").  To comply with Rule 9(b), a plaintiff

"'alleging fraud [must] set forth the time, place and contents of the false representation, the

identity of the party making the false statements and the consequences thereof.'" *Tal*, 453 F.3d at

1263 (quoting *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (internal quotation

marks omitted)).  In addition, the plaintiff must identify how the communications "were

allegedly fraudulent and how they furthered the fraudulent scheme."  *Id*. at 1265.  In other

words, a plaintiff bringing a fraud claim "must know what his claim is when he files it."  *Farlow

v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 990 (10th Cir. 1992).

  The Roaches complain that the statements in the COMPLAINT that "[i]t is not possible

for plaintiff to plead with particularity every instance" and that Sundance only pleads "[b]y way

of example" do not comply with Rule 9(b).  Despite these admittedly general comments,

Sundance, however, actually relies on rather exhaustive and detailed lists of numerous alleged

illegal transactions by the Roaches to factually support the wire and mail fraud claims.  These

lists mostly include dates of transactions, the Defendant who made the transaction, the amounts

of the transactions, the Sundance accounts involved in the transactions, Sundance check numbers

when appropriate, and the specific accounts which received Sundance's funds.  In fact, the

Roaches do not complain about a lack of specificity regarding the alleged dates of the

transactions, the alleged identity of the Defendant making the transactions, or the alleged amount

of the transactions.

  The Roaches argue, however, that the lists of allegedly fraudulent transactions do not

satisfy Rule 9(b)'s particularity requirement because Sundance does not allege facts which show

how those transactions were fraudulent.  The Roaches contend that the conclusory allegation that

the transactions were for "personal" expenses does not necessarily mean that the transactions

were fraudulent, especially when, with respect to the credit card transactions, there are no

allegations regarding what was charged on the credit cards.  The Roaches note that those credit

card transactions could have been "innocent acts to reimburse business expenses...."  MOTION

TO DISMISS at 8.

Whether the expenses are generally characterized as "personal" is not particularly relevant. What is significant is that Sundance clearly alleges in the COMPLAINT that the Roaches used Sundance funds, without Sundance's permission, to pay for expenses not related to the Sundance business and that those transactions harmed Sundance while benefitting the Roaches and their friends and family. Whether the transactions were innocent is a defense which is not properly raised in the context of a motion to dismiss. The Roaches, however, may raise that defense by other appropriate means in the course of litigation. In sum, Sundance has set forth the time, place and contents of numerous allegedly fraudulent transactions, the identity of the Defendant making those fraudulent transactions, the consequences of those fraudulent transactions, how those transactions were fraudulent, and how the transactions furthered the fraudulent scheme. Sundance has, therefore, complied with Rule 9(b) as to those specifically pled fraudulent transactions.

### 2. *Rule 12(b)(6): Failure to State a Plausible Claim Upon Which Relief Can be Granted*

A court, in accordance with Rule 12(b)(6), may dismiss a complaint for "failure to state a claim upon which relief can be granted." In ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded allegations as true and must view them in the light most favorable to the plaintiff. *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). Rule 12(b)(6) requires that a complaint set forth the grounds of a plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint does not need to include detailed factual allegations, "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* In other

16

words, dismissal of a complaint under Rule 12(b)(6) is proper only where it is obvious that the

plaintiff failed to set forth "enough facts to state a claim to relief that is plausible on its face." *Id.*

at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the
> court to draw the reasonable inference that the defendant is liable for the misconduct
> alleged.  The plausibility standard is not akin to a "probability requirement," but it asks
> for more than a sheer possibility that a defendant has acted unlawfully.  Where a
> complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops
> short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937, 1949 (2009)(citations omitted).

### a. Plausibility of the Mail and Wire Fraud Claims

The Tenth Circuit Court of Appeals has set forth the elements for mail and wire fraud as

follows:

> The elements of federal mail fraud as defined in 18 U.S.C. §1341 are (1) a scheme or
> artifice to defraud or obtain property by means of false or fraudulent pretenses,
> representations, or promises, (2) an intent to defraud, and (3) use of the mails to execute
> the scheme.  The first and second elements of federal mail and wire fraud are identical.
> The third element of wire fraud as defined in 18 U.S.C. §1343 is the use of interstate wire
> or radio communications to execute the scheme.  One may "defraud" another within the
> meaning of §§1341 and 1343 by depriving another of property or "the intangible right of
> honest services."  Whether alleging a deprivation of property or honest services or both, a
> mail or wire fraud indictment must allege a scheme to defraud, an intent to defraud, and
> use of mail or wire.

*United States v. Welch*, 327 F.3d 1081, 1104 (10th Cir. 2003) (citations omitted).  A scheme to

defraud is defined as "'conduct intended or reasonably calculated to deceive persons of ordinary

prudence or comprehension.'" *Id.* at 1106 (quoting *United States v. Cochran*, 109 F.3d 660, 664-

65 (10th Cir. 1997)).  Because a scheme to defraud focuses on the "intended end result," a

scheme to defraud "may come within the scope of the statute even absent an affirmative

misrepresentation."  *United States v. Cronic*, 900 F.2d 1511, 1513-14 (10th Cir. 1990).  "A fact-

finder may infer an intent to defraud where a defendant intends to deprive another of its money,

other property, or right to honest services through deceit or misrepresentation." *Welch*, 327 F.3d at 1106. One way to establish intent to defraud is to produce "proof of contemplated or actual harm to the victim or others." *Id*. at 1105. Another means to show intent to defraud is to provide "proof of potential, actual, or contemplated gain." *Id*. at 1106.

The Roaches argue that Sundance has not stated a plausible mail or wire fraud claim because Sundance has not alleged facts that show deceptive conduct on the part of the Roaches, i.e, a scheme to defraud. The Roaches contend that all of the transactions were "completely open and obvious" and that the records of the transactions were available to Sundance for inspection for several years. *See* MOTION TO DISMISS at 9-10. Consequently, the Roaches conclude that their actions would not have deceived a person of ordinary prudence or comprehension.

Sundance responds first by stating that the Tenth Circuit does not require an allegation of misrepresentation to state a plausible mail or wire fraud claim. This statement is correct because a scheme to defraud can occur without an affirmative misrepresentation and intent to defraud can be inferred by either deceit or misrepresentation. The Roaches, however, are not arguing that Sundance has failed to allege facts demonstrating misrepresentations by the Roaches. The Roaches, instead, contend that Sundance has not pled facts showing deception by the Roaches.

Next, Sundance correctly asserts that the scheme to defraud element focuses on whether the <u>conduct</u> (as opposed to an intent to defraud, a separate element of mail or wire fraud) was "intended to or reasonably calculated to deceive others" and that the scheme to defraud element focuses also on the "intended end result." RESPONSE at 8. Sundance claims that its myriad allegations of wire and mail transactions by the Roaches to illegally transfer Sundance's funds show conduct by the Roaches which is illustrative of a scheme to defraud. To decide whether

18

this alleged conduct constitutes a scheme to defraud, the Court must decide whether Sundance has alleged facts which show that this conduct was "intended or reasonably calculated to deceive persons of ordinary prudence or comprehension." Because Sundance does not allege that the Roaches' conduct was somehow hidden from it or undiscoverable by even a simple audit, the Court is hard-pressed to determine that Sundance has alleged sufficient facts which show that the Roaches' open transfer of Sundance funds without Sundance's authorization was intended or reasonably calculated to deceive a person of ordinary prudence or comprehension.[9] Sundance's allegations appear to be straightforward claims of theft. Consequently, there are insufficient factual allegations in the COMPLAINT to support a plausible scheme to defraud.

Sundance further argues that it has alleged facts which show an intent to defraud: 1) the Roaches harmed Sundance by depleting its funds; and 2) Donna Roach made affirmative misrepresentations of fact to Sundance by placing Short; Richard Velasquez, Jr; Trujillo; and Defendant Anthony Pender[10] on the Sundance payroll for "phony" jobs; by creating a "phony" company, A. R. Construction; and by mislabeling Sundance's income in violation of 26 U.S.C.

---

[9]The fact that Donna Roach was the president and secretary of Sundance would not have prevented another Sundance officer, like the treasurer, or a shareholder from requesting periodic audits or from simply examining Sundance's financial records.

[10]Anthony Pender is one of Donna Roach's nephews and the son of Defendant Joann Pender. Joann Pender is Donna Roach's sister.

§7206(4)(B).[11]  Moreover, Sundance contends that it has sufficiently alleged in the

COMPLAINT that the Roaches used mail and wire communications to further their scheme to

defraud Sundance.  Even if these allegations show an intent to defraud and that the mail and wire

communications were used to execute the scheme to defraud, two elements of wire and mail

fraud, Sundance has failed to allege facts which demonstrate the scheme to defraud element.

Without a scheme to defraud, the mail and wire fraud claims are simply not plausible claims.

### b. Plausibility of the Money Laundering Claims

Sundance alleges that the Roaches laundered money they received from their wire, mail,

and tax fraud activities in violation of 18 U.S.C. §§1956(a)(1)(A)(ii), 1956(a)(1)(B)(i), and

1957(a).  Section 1956(a)(1)(A)(ii) states that money laundering occurs when a person,

"knowing that the property involved in a financial transaction represents the proceeds of some

form of unlawful activity, conducts or attempts to conduct such a financial transaction which in

fact involves the proceeds of specified unlawful activity ... with intent to engage in conduct

constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986...."

Emphasis added.  Section 1956(a)(1)(B)(i) states that money laundering also occurs when a

person, "knowing that the property involved in a financial transaction represents the proceeds of

---

[11]The Court assumes that the allegations of affirmative misrepresentations by Donna
Roach concern an intent to defraud, which can be inferred from misrepresentations.  The Court,
however, notes that the alleged specific incidents of wire and mail fraud indicate that the
Roaches, not any "phony" employees or "phony" company, benefitted from those transactions.
Moreover, the Roaches could not have violated §7206(4)(B) because it does not exist, and if
Sundance is referring instead to §7206(5)(B), that provision prohibits falsifying records related
"to the financial condition of the taxpayer" in connection with compromises or closing
agreements with the Internal Revenue Service, a situation not present here.  Even if Sundance
alleges that the mislabeling of income resulted in untimely corporate tax returns, Sundance does
not indicate if it was unaware of the mislabeling, what the extent of the mislabeled income was,
and how often or when the alleged mislabeling occurred.

some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity ... to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity...."  Emphasis added.  Finally, under §1957(a), money laundering occurs when a person "knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity...."  Emphasis added.  The money laundering provisions relied upon by Sundance all require that the proceeds to be "laundered" involve the proceeds or be derived from "specified unlawful activity."  Mail and wire fraud are specified unlawful activities under the money laundering statute.  *See* 18 U.S.C. §1957(f)(3); 18 U.S.C. §1956(c)(7)(A); 18 U.S.C. §1961(1).  Tax fraud, however, is not considered a "specified unlawful activity."[12]  *Id.*

The Roaches argue that Sundance has not alleged a plausible money laundering claim because Sundance has failed to allege that the funds the Roaches purportedly laundered derived from a specified unlawful activity or involved criminally derived property.  Sundance alleges generally in the COMPLAINT that the Roaches laundered proceeds received through violations of the wire and mail fraud statutes, i.e., specified unlawful activities.  Unfortunately for Sundance, the Court has concluded that Sundance has failed to state plausible mail and wire

---

[12]Specified unlawful activities are basically the same as the RICO predicate acts.

fraud claims.[13]  Moreover, Sundance's allegation that the Roaches laundered money by mislabeling income and, therefore, committing tax fraud is not plausible because tax fraud is not a specified unlawful activity in the money laundering statute.  Without a plausible allegation that the proceeds used in the alleged money laundering came from specified unlawful activities, Sundance cannot state a plausible money laundering claim under §§1956(a)(1)(A)(ii), 1956(a)(1)(B)(i), and 1957(a).

c. *Plausibility of the RICO Counts*

To state a plausible RICO claim, a plaintiff must first state a plausible claim for a predicate act.  Here, Sundance has failed to state plausible claims for the alleged predicate acts of wire fraud, mail fraud, and money laundering.  Sundance, therefore, cannot plausibly state a RICO claim.[14]  Consequently, Counts I, II, and III are subject to dismissal without prejudice

---

[13]Aside from generally relying on its allegations of mail and wire fraud under the sections of the COMPLAINT describing the predicate acts of mail and wire fraud, Sundance alleges in the COMPLAINT'S money laundering section that with respect to the construction of the residence, guest cottage, and swimming pool, the Roaches also wrote various checks from Sundance bank accounts to Ramos and several businesses, and made an online transfer of Sundance funds to Ramos.  These additional allegations do not mention use of the United States Postal Service so Sundance is not alleging mail fraud.  Moreover, only one online transfer is referred to which could be considered a wire transfer.  Even considering this single wire transfer with Sundance's other allegations of fraudulent wire transfers, the Court concludes that Sundance still has not alleged sufficient facts to demonstrate a plausible "scheme to defraud" to support a wire fraud claim.   Having failed to plead a separate plausible wire fraud claim, i.e., an additional specified unlawful activity, Sundance has not stated a plausible alternative money laundering claim concerning the building of the residence, guest cottage, and swimming pool.

[14]Because the Court has determined that Sundance has not stated plausible RICO predicate acts, it is unnecessary for the Court to address the Roaches' other arguments in favor of a Rule 12(b)(6) dismissal of Counts I, II, and III.

under Rule 12(b)(6).[15]

   3.  *Sundance's Request to Amend the COMPLAINT to State Plausible RICO Claims*

   Sundance requests in the last sentence of its RESPONSE at 24 that "in the event that this

Court decides to grant any part of the Roaches' Motion, this Court should do so ... with leave to

file an Amended Complaint to cure any pleading defects."   "[N]ormally, a court need not grant

leave to amend when a party fails to file a formal motion."  *Calderon v. Kansas Dept. of Social*

*and Rehabilitation Services*, 181 F.3d 1180, 1185 (10th Cir. 1999).  Moreover, under the local

rules, "[a] proposed amended complaint must accompany the motion to amend."  D.N.M. L.R.-

Civ. 15.1.  Nonetheless, the Tenth Circuit Court of Appeals has held that a formal motion to

amend is not always necessary.  However, "a request for leave to amend must give adequate

notice to the district court and to the opposing party of the basis of the proposed amendment

before the court is required to recognize that a motion for leave is before it."  *Calderon*, 181 F.3d

at 1186-87.  Sundance's conclusory request for leave to amend does not meet this standard.  *See*

*id*. at 1187 "[W]e hold that Ms. Calderon's single sentence, lacking a statement for the grounds

for amendment and dangling at the end of her memorandum, did not rise to the level of a motion

for leave to amend.").  Consequently, Sundance's request for leave to amend will be denied.

   4.  *Exercise of Supplemental Jurisdiction Over the Remaining State Claims*

   Since the Court has decided to dismiss the RICO Counts, the Court must decide if it

should continue to exercise supplemental jurisdiction over the remaining state claims.

---

   [15]"Generally, dismissals of claims for failure to state a claim upon which relief may be
granted are without prejudice," because the defect addressed by Rule 12(b)(6) may be curable.
*Buchanan v. Oklahoma*, 2010 WL 1449603 *4 (W.D. Okla.) (unpublished decision); *Douglas v.
Hilligoss*, 2010 WL 1329075 *2 (W.D. Okla.) (unpublished decision) (citing *Curley v. Perry*, 246
F.3d 1278, 1282 (10th Cir. 2001)).

According to 28 U.S.C. §1367(c)(3), a district court may decline to exercise supplemental jurisdiction once it has dismissed the claims over which it had original jurisdiction.  *See Lancaster v. Independent Sch. Dist. No. 5*, 149 F.3d 1228, 1236 (10th Cir. 1998).  Where federal question jurisdiction has been asserted, as in this case, and all of the federal claims are dismissed before trial, the courts will generally dismiss the state law claims without prejudice.  *See Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1237 (10th Cir. 1997).  Because Sundance's federal claims are subject to dismissal, the Court declines to exercise supplemental jurisdiction over the state law claims and those claims will, therefore, be dismissed without prejudice.

IT IS ORDERED that:

1.  the MOTION OF DEFENDANTS DONNA ROACH AND KELLY ROACH TO DISMISS COUNTS I, II, AND III OF PLAINTIFF SUNDANCE SERVICES, INC.'S CIVIL RICO CLAIM[S] FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED (Doc. No. 178) is granted;

2.  Sundance's request to amend Counts I, II, and III is denied; and

3.  the entire COMPLAINT will be dismissed without prejudice.

_____
SENIOR UNITED STATES DISTRICT JUDGE